# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **S.G.**

**No. 16-0335** (Wood County 14-JA-44)

**FILED**

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.M., by counsel Dean Furner, appeals the Circuit Court of Wood County's February 25, 2016, order that terminated his parental rights to S.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather L. Starcher, filed a response on behalf of the child also in support of the circuit court's order. The child's maternal aunt, C.G., by counsel Michael D. Farnsworth, Jr., also filed a response in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred when it adjudicated him as an abusing parent and terminated his parental rights.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2014, the DHHR filed an abuse and neglect petition against the mother and another individual whom the DHHR believed to be the child's father. The petition alleged that the mother abused drugs while the child was in her care. Paternity tests later determined, however, that the individual listed in the original petition was not the child's father. Accordingly,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

the DHHR published notice to the unknown father as required by statute. Ultimately, petitioner appeared at the mother's dispositional hearing in October of 2014.[3] During the hearing, petitioner indicated that he strongly believed he was the child's father and requested visitation with her. The circuit court granted this request and also ordered genetic testing to determine if petitioner was the child's biological father.

After genetic testing confirmed that petitioner was the child's biological father in January of 2015, the circuit court granted petitioner continued visitation with the child, and petitioner agreed to submit to random drug screens. However, by this point, petitioner had already begun to miss visits with the child. In February of 2015, the child's maternal aunt, C.G., filed an abuse and neglect petition that alleged petitioner neglected the child when he abandoned her, failed to provide for her, failed to protect her from the mother's drug use, and failed to establish paternity in spite of his acknowledgment that the child was his. Moreover, the aunt, who had placement of the child, alleged that petitioner missed multiple visits with the child and had a drug problem which could affect his ability to parent. That same month, the circuit court held a hearing to address petitioner's motion for custody of the child. The circuit court heard evidence that petitioner missed several drug screens, tested positive for Xanax on one occasion, and missed several visits with the child. As such, the circuit court declined to place the child in petitioner's custody.

In March and April 2015, the circuit court held adjudicatory hearings regarding petitioner. During the hearings, the circuit court heard evidence that petitioner believed the child to be his prior to the paternity test in this matter. In fact, the evidence established that petitioner had a tattoo of the child prior to the testing. In light of this evidence, the circuit court found that petitioner neglected the child because of his failure to support her. The circuit court also granted petitioner a post-adjudicatory improvement period. As part of the improvement period, petitioner agreed to participate in a psychological evaluation and continue visitation and drug screens. In October of 2015, the circuit court held a review hearing on petitioner's improvement period. During the hearing, the visitation supervisor testified that since January of 2015, the provider scheduled twenty-five visits between petitioner and his child, but that petitioner cancelled ten of those visits. Moreover, between April of 2015 and June of 2015, petitioner chose not to exercise visits because he was displeased with the proceedings. According to the supervisor, petitioner began attending visits again in July of 2015, but of the twelve opportunities he had for visits since that time, petitioner missed four.

In January of 2016, the circuit court held a dispositional hearing in regard to petitioner. During the hearing, petitioner's counsel admitted that petitioner attended only one visit with the child since the prior hearing. Counsel further indicated that, although he objected to the termination of his parental rights, petitioner would not participate in any further improvement period. Petitioner also indicated that he would allow the child's maternal aunt to have custody of the child if he was permitted continued visitation with her. At the conclusion of the hearing, the DHHR, the guardian, and the child's maternal aunt all asked the circuit court to terminate petitioner's parental rights. The circuit court found that petitioner failed to utilize the opportunity

---

[3]The mother's parental rights were terminated at this hearing.

to bond with his child through visitation and that she had been in the care of her maternal aunt for most of her life. Ultimately, the circuit court terminated petitioner's parental rights. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, the Court finds no error in regard to petitioner's allegation that the circuit court erred in adjudicating him as an abusing parent. On appeal, petitioner conflates the burdens of proof for adjudication and disposition by arguing that his actions during the abuse and neglect proceedings did not establish that he abandoned the child such that his parental rights should have been terminated. This argument is misplaced, as it is petitioner's actions at the time of the petition's filing that form the basis for adjudication. *See* Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (holding that in order to satisfy the clear and convincing burden of proof at adjudication, the DHHR is required "to prove 'conditions existing at the time of the filing of the petition . . .'" as required by West Virginia Code § 49-4-601).

Moreover, petitioner's argument hinges entirely on his assertions that the circuit court adjudicated him of abandonment and that his actions did not satisfy the elements for such an adjudication.[4] However, the Court notes that petitioner's argument misstates the record on

---

[4]The abuse and neglect petition that named petitioner contained allegations beyond abandonment, including a failure to provide for the child. The circuit court's adjudicatory order does not make any reference to a finding of "abandonment" by petitioner. Similarly, the transcripts from the adjudicatory hearings in this matter show that the circuit court, in reaching adjudication, focused solely on petitioner's failure to provide for the child in determining that petitioner neglected S.G. However, the circuit court's dispositional order states that petitioner "was adjudicated as abandoning the child . . . ." Upon our review, the Court finds that the circuit court's use of the word abandonment in the dispositional order does not amount to a finding of abandonment at adjudication. In addressing abandonment, we have held that

(continued . . .)

appeal. Specifically, in its July 29, 2015, order adjudicating petitioner, the circuit court specifically found that petitioner "failed to provide support for [the child] even though he had reason to suspect that he was the father[.]" Based upon this finding, the circuit court found that petitioner "neglected the child by not being sufficiently involved in the child's life." As such, it is clear that the allegation of abandonment did not form the basis for the circuit court's adjudication. Instead, the circuit court properly adjudicated petitioner of neglecting the child by virtue of his failure to provide for her or otherwise care for her, despite the fact he believed the child to be his prior to the establishment of his paternity.

> Pursuant to West Virginia Code § 49-1-201, a "neglected child" is one
>
> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian

The record in this matter is clear that although petitioner was confident enough in his paternity to obtain a tattoo of the child, he provided no support to her, either financial or otherwise, prior to the instant proceedings. Further, after his paternity was established, but prior to the filing of the petition alleging neglect against him, petitioner continued in his failure to support the child, as evidenced by his statements to the child's maternal aunt that he did not want to support the child and his failure to supply necessary items during the visits he attended. While petitioner argues on appeal that he "never received any financial help to prepare him to be the father of the subject child," he presented no evidence below that his neglect of S.G. was due to a financial inability to

---

> Abandonment of a child over the age of six months shall be presumed when the birth parent: (1) Fails to financially support the child within the means of the birth parent; and (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

*In re Emily*, 208 W.Va. 325, 339, n. 26, 540 S.E.2d 542, 556, n. 26 (2000) (quoting W.Va. Code § 48-4-3c(a)(1)(2) (1997) (Repl.Vol.1999)). There was no evidence below that petitioner failed to visit or otherwise communicate with the child in the six months preceding the petition's filing. As such, petitioner could not have been adjudicated of abandonment because the evidence was insufficient to meet the legal definition of this term. However, as addressed more fully herein, petitioner was appropriately adjudicated of neglecting the child because of his failure to support her. Accordingly, the Court will treat the circuit court's use of the word "abandoning" in its dispositional order to mean neglect as defined in W.Va. Code § 49-1-201 and not the legal definition of "abandonment."

4

support the child. As such, the Court finds no error in the circuit court adjudicating petitioner as an abusing parent.

Finally, the Court finds no error in the termination of petitioner's parental rights. In support of this assignment of error, petitioner argues that his actions below did not rise to a level that necessitated termination of his parental rights. Specifically, petitioner argues that he substantially complied with the terms of his improvement period and that he should have been entitled to a less-restrictive dispositional alternative so that he could remain in the child's life. The Court, however, does not agree. Petitioner makes much of the fact that the circuit court based termination, in part, upon his failure to consistently visit the child. Specifically, petitioner argues that the circuit court erroneously based termination upon his decision to cancel one visitation to engage in paintball with friends. According to petitioner, parents are entitled to have interests and lives beyond their children and this finding constitutes error. The Court, however, notes that petitioner's argument mischaracterizes the circuit court's finding.

Adjudication in this matter was specifically based upon petitioner's failure to be involved in the child's life, including a failure to support the child. This includes all forms of support, such as supervision, that a parent would provide through interactions with the child. Petitioner knew that in order to remedy the conditions of abuse and neglect present herein he needed to comply with the terms and conditions of his improvement period, which included supervised visitation with the child. Despite this knowledge, petitioner missed numerous visits with the child throughout the proceedings. It was noted below that petitioner missed visitations before he was even a named party and that his compliance with visitation only deteriorated once the maternal aunt filed a petition naming him as a respondent. Testimony from the visitation supervisor below established that petitioner missed at least fourteen visits during the pendency of the proceedings. Moreover, for a period of approximately two months, petitioner chose not to exercise visitation because he was displeased with the proceedings.

According to petitioner, his failure to visit with the child does not constitute a sufficient ground upon which to base termination of his parental rights. The Court disagrees. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n. 14, 479 S.E.2d 589, 600, n. 14 (1996)(citing *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 228 and 237, 470 S.E.2d 177, 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). We find that petitioner's apparent disinterest in visiting with his child only shows that the circuit court was correct in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect.

Pursuant to West Virginia Code § 49-4-604(c)(3), there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the

abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

The record on appeal is clear that petitioner simply failed to respond to or follow through with the reasonable family case plan in this matter. Despite requesting additional visitation with the child, petitioner routinely failed to attend the same. More importantly, at disposition, petitioner's counsel indicated that petitioner would not participate in any further improvement period. As such, the circuit court properly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of his parental rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. Accordingly, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the circuit court's February 25, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**:  November 14, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II